Last case is Abella Owners Association v. MI Windows & Doors. Mr. Somerville, whenever you're ready, we'll hear from you. May it please the court. I am George Somerville, counsel for the appellant Abella Owners Association. This is primarily a case of application of law to the facts. So with the court's indulgence, I would like to begin by highlighting just a few of the key facts. Abella's action was filed in state court in California in September 2012. The MDL proceeding in the district court was already underway at that time. MI's counsel defended the state case in California for nearly three years, never said a word about the MDL proceeding. The district court entered a preliminary approval order in February 2015. That order enjoined prosecution of any other lawsuit in any other jurisdiction. MI's counsel never mentioned it. It allowed Abella to go on litigating that California case knowing that it was subject to a federal court injunction. A lengthy class notice was mailed in April 2015. Abella's counsel received it. He didn't recognize its significance. And of course, one issue in this case is whether there was excusable neglect. So was there any problem before that happened? I mean, the fact that he didn't mention it before the settlement? You mentioned all this is going on. You've got the California action. You've got the multi-district litigation going on. The counsel didn't mention it, too. But the settlement comes up, and he gets notice of it. So what does the not knowing about it before the settlement add to it? Other than to indicate that probably the counsel wasn't on notice to receive it or things of that nature. But none of that's required. Well, I think that MI was under a duty on a couple of grounds to call attention of Abella to the MDL proceeding. Actually, he may be out of school if he does that. Under class action, counsel can't go to class action members without approval of the court and under the form that the court approves. And while they're litigating and might casually mention it when we're talking about official legal duties, the notice that the court issued in April to the class members gave them the option to opt out at that point. They didn't have to go along with it. And Judge Wynn's question is exactly where the rub is in this case. It doesn't matter what happened before. You now get an official notice from a court in an MDL case that says you have a chance to opt out and you don't opt out. Now, he obviously didn't recognize, well, he said he's on vacation, he's trying cases and so forth. Some paralegal stamped it. But there somehow was a lapse of management because whatever comes across his desk should be brought to his attention daily, I would think. If I were out trying cases or on vacation and a paralegal didn't call me and say you got a notice in the MDL case, that's sort of strange. I mean, that's basically what he's saying. He's saying I was out trying cases and I had vacation and therefore I didn't see it until August. That's from April to August. He didn't see that notice. Is that excusable neglect? Your Honor, I want to go straight to that issue. Excusable neglect is the narrowest ground on which this court can decide this case, so I want to argue that first. Now, the only point I was trying to make earlier was that MI's counsel, as well as Abella, was in a position to prevent the oversight. Except if counsel in a class action started going to absent class members and talking about this or that, you may be violating all kinds of rules. The class representatives are the ones that have to correspond with court approval. This is regulated, as you know, under Rule 23, and until you get to that point in time, the class representatives are prosecuting the case only. Now, at some point in time, the class members can opt out. Now, if they don't opt out, now they become parties bound by the action. I think there was a duty on MI's part on two grounds to call attention to the MDL case. One is if a party in California is going forward with state litigation that is prohibited by a federal court injunction, somebody, and I would say MI is the party, needs to call their attention to that. Second, MI filed a series of three case management statements in the California case. In each of them, they left blank on the questions whether there were any related cases or any matters that may affect the court's jurisdiction or processing of this case, meaning the California case. Well, the MDL case obviously could affect that court's jurisdiction or prosecution of that case. You said the court issued an injunction in February? Yes, sir. That is at page 134 of the appendix. What did it say? That's the preliminary approval order in joint prosecution of any other lawsuit in any other jurisdiction. That's approving the settlement. That's the preliminary approval. Preliminary approval. Yes. And the preliminary approval is then subject to notice, which came out in April. The injunction didn't issue until, what, October? The injunction, well, there were a series of injunctions. There was an injunction in February with the preliminary approval order. There was an injunction in July with the final order. And I don't know why MI didn't proceed by way of a motion for contempt against Abella, but it sought a third injunction, and it got a third injunction. I want to talk a little bit about these case management statements in California. MI did not mention in its brief the provision about affecting the jurisdiction or processing of that case. Obviously, it could have that effect. It did argue on its brief that the California rules define related cases as only California cases, but the rule that it cited does not apply to these case management statements. The rule that it cited, and if court's permission, I have copies of the California rules that I would like to pass up to the bench. I think we will see, when you look at those rules, that Rule 3.300, the rule... Did you cite that in your brief? MI cited Rule 3.300. Okay. That's fine. That rule requires a party to serve and file a notice of related case, a different document altogether with reference to California cases. The different rule, also in the package that I've handed to the clerk, Rule 3.725, governs case management statements. Now, on the excusable neglect issue, the Supreme Court's pioneer statement... Let me make sure where that argument goes. I'm sorry? I want to understand where your argument is going on that. This is the point of bringing up MI's duty under California law and how that relates to this. Is this excusable neglect? In other words, this is the reason why there was excusable neglect? Yes, and here's why. Pioneer states four factors, but they are not stated as exclusive. I think the responsibility of an opposing party is part of all... Before we get into the... Because this is getting confusing. So you got this February 2015 preliminary settlement approval. Yes. And then you got until a certain period of time, I guess it's May, to opt out. And there's no question that you got notice of that. Yes. And all during that time period, nothing happened. And you didn't opt out. And then it's the time period now. Anthony was saying, well, I should be excused for the time period from February to May, even though I knew, as everybody else that's in the process, because there's probably a lot of people that don't know. I guess I sort of get these things, too. Every now and then I'll see a class action. It says you can opt out if you want to. You can be a part of it. You get your dollar check. And I'm trying to follow. Is there some duty on somebody to notify me in those kind of action or others who are not a part of it? Or is it only when there's another action that's pending? And if you do, then that entitles them to a different type of notice than this? Well, I think it does arise from the unique circumstances of this case where there was another action that was enjoined as of February, and it was an action in a state that had rules that required notification of related cases in cases that may affect the jurisdiction or processing of the court. Well, is that a federal situation then? If California says you ought to do it, maybe California feels like it should continue on its action there. I don't understand what we do about that because California says it. You addressed the question respectfully, Your Honor, as to whether there was excusable neglect in this case. And the four factors in Pioneer, first is the danger of prejudice. I'm sorry to interrupt you before you get to the factors, but when you say we address it, I mean, we don't address it de novo, right? We decide whether the district court abused its discretion. Well, it's not quite as simple as that. Do you think we decide whether this was excusable neglect? Well, it's not. I think so. And I think the Pioneer case illustrates that. But the basis that you're relying on is you got notice, but you didn't get enough notice. Is that it? Well, Your Honor, one of the four factors cited in Pioneer is the... Forget Pioneer right now. The question is a very legitimate one. The question is you got notice on April 5 or 6, and the question is, was that adequate notice? And if that's adequate notice, then what's the excusable neglect for not paying attention to that notice at that point? You keep going back to before. They weren't warned about the fact that notice is coming. But the notice comes, and you get it, and you date stamp it, and you receive it. Now, the question is, why didn't you respond to that notice? Judge Niemeyer, excusable neglect has to be decided by looking at all... My question goes, why didn't you respond to the April 5 notice? They missed it. It was a mistake. And that's not excusable, then. You have to look at all four factors and any other relevant circumstances. That is what divided the Supreme Court in the Pioneer case. The dissenting justices said if the neglect itself is sufficient, then we don't need to look at the other factors. The majority said that's wrong. You have to look at all four. I think, then, that the district court looked at all four. Like, I don't understand. There's no legal error below. So the district court adopted precisely your reading of that case and looked at all of the factors, carefully applied them to the facts of this case, and said, I don't see any excusable neglect. And you think we start from scratch and do all of that ourselves? No, but I think that this court must apply its judgment as to the legal characterization of historical facts. That's what the Supreme Court did in the Pioneer case. Well, where did the district court err? First, it committed clear error in finding that there was a prejudice to M.I. M.I. never argued that there was any prejudice in its emotion, in its reply brief, or at oral argument. At oral argument, it was asked by the judge, what prejudice is there to M.I. by letting Abella have an extension? And M.I. said in response, we are trying to bring closure to a case and the opt-out period has closed. I understand that, but that doesn't state any way in which M.I. has been prejudiced. M.I. has never stated any way in which it would have handled the settlement discussions any differently, it would have done anything after the settlement differently, or it has been harmed in any way by letting Abella opt out now. So in finding prejudice to M.I., the district court with all respect... I thought the district court made a really good point, that they're going to have to continue to defend this action in California after they thought they had bargained for an end to this litigation. And not only that, but now anybody who missed the opt-out deadline can come in and say, I want to start again. I mean, I thought those were pretty compelling findings by the district court. That's another place where the district court erred. The district court said that it would open the floodgates if it allowed Abella out. But on another point in its opinion, at a footnote on page one, it said there are no other parties like this. The only remaining controversy is between Abella and M.I.W.D. And I have the page citation here somewhere, but it's page one of the trial court opinion where it said that. This is the only party that has another case out. There is no flood behind those gates. I'm sorry, I will let this go in one minute, but that's not what the district court said in its opinion on excusable neglect. It's not talking about whether someone else is going to pursue separate litigation. It's saying, if I now announce a rule that says anyone who just forgot to opt out can opt out after the fact, that's going to be a problem for the validity of this settlement. It doesn't matter whether you're litigating something separately somewhere else right now. It's that from now on, the opt-out deadline doesn't matter because it's enough to come to court and say, I was on vacation. Why isn't that a problem for the finality of these settlements? That's where the first impression issue comes into play. The fact that Abella already had a case pending and had been litigating for three years. That's an expensive proposition to go on for three years and then suddenly have it jerked away from you. Here's what I see as another problem. The judge did look at those four factors we talked about. He may not be happy with what he did, but he did. But he didn't file the opt-out notice until four months later. I'm not saying that's the period that you said that you would have been okay had you done it August the 16th or earlier, but at least that said, wait a minute. If you find out this thing, you know you were supposed to file it back in May. You found out in August. Why would you wait until December to actually file it? And if you can do that, then what's wrong with waiting? How come you couldn't just file it today or another, you know, down the road sometime? Judge Wynne, I don't know why they filed in December as opposed to August, but I do know this. The case is very similar to Pioneer in this respect. The bankruptcy court, which was the trial court in that case, found that counsel was negligent and to a degree indifferent. Indifferent. The Supreme Court did not set aside that finding, but it found because all of the other three factors weighed strongly in favor of allowing an extension, that it reversed, actually it affirmed, technically affirmed the judgment of the Ninth Circuit and held that there was excusable neglect and that the party at issue in that case was entitled to an extension. This case is pretty much on all fours with Pioneer when you get to that. All right. Thank you. You have some rebuttal. Mr. Perone. Thank you, Your Honors. Patrick Perone on behalf of the Helly MI Windows and Doors, Inc. Your Honor, with- Is it on all fours with Pioneer? Pardon me, Your Honor? Is this case on all fours with the Pioneer case? No, not at all. In fact, it's entirely distinguishable, and in fact, Pioneer shows why the district court judge's opinion should be affirmed. In the Pioneer case, the court set out the four factors that are not exclusive, but four factors that a district court should consider in determining whether to permit an extension of time, in this case, to opt out late. I think what's distinguishable in Pioneer is that Pioneer said, the Supreme Court said, we give little weight, if any, to the fact that the person who was seeking the additional time had a busy schedule or was on vacation. The court didn't look at those and say, oh, that's the reason we're going to allow this person to extend. No, the court said that's not the reason. The court said that in that case, the distinguishing issue really was the notice, that there was a notice that went out in, I'll paraphrase, in a form that was much different than litigants would have expected and would not necessarily have noticed that they were supposed to file a claim at a particular time. That was the crux of the court's decision. Pioneer went on to say, if there was any evidence, any evidence of prejudice to the respondent, or if there was any evidence that this was going to interfere with the administration of the proceeding, they would absolutely have not found, or they would have basically stated, the court would certainly have been within its discretion to deny that request for additional time, and it would not have been an abuse of discretion. In this case, there is no basis to find that the district court abused its discretion. As your honors know, it's a very high standard. It's a deferential standard. The court doesn't substitute its judgment, and it looks for clear errors of law or fact. There are no clear errors of law or fact. The district court, in fact, looked to the various pioneer factors. Now, with respect to prejudice, counsel says, M.I. didn't argue prejudice. M.I. argued the very point of prejudice that the district court found was prejudicial, that this is a class action, and counsel doesn't seem to argue, or Abella doesn't seem to argue the context of the case. It's a class action. There are various principles that go along with a class action, like bringing final resolution to a multi-district court case to a national matter. And when you look at that, then the issue of prejudice becomes quite clear, which is finality. And at the district court, M.I.'s counsel argued, the prejudice to us is that we have litigated this case for many years. We have negotiated a settlement for months, and your honors have seen that in the record, and we finally got peace. We reached a final fair, fair settlement, which the court found to be fair, to all the parties, including the class members. It is prejudicial to then say, oh, well, I'm going to allow Abella to opt out, and we can discuss the various reasons in a moment, which is then going to lead, as the court recognized, to others saying, oh, well, if Abella, who had a lawyer who actually got the document, gets to now opt out six months later, why shouldn't I, who maybe did not have direct mail notice because you weren't known, but received notice through the web or through a newspaper article or that type of notice, which is constitutional and meets the process. Is prejudice a problem, or is it more so in this particular case, because we do have indications of counsel that the opt-out notice was noticed or they saw it in August of 2015, but they didn't actually do anything until December of 2015? Does that make this somewhat, even if you went along with it, different? Absolutely. It makes it more, frankly, it makes it even more egregious and lends more justification for the district court's ruling, which the district court made a point, Your Honor, to say, well, wait a minute. You got August. You got, even under your own scenario, you got notice or you recognized the significance of the notice in August. You didn't do anything. They cite cases in their briefs, and they say, oh, well, our case is like those cases, but in those cases the judge distinguished them. He said in the various cases you cited, once the entity or the individual found out that there was a time issue, within one or two days they notified the court. This is a situation where the lawyer, and we can talk a little bit maybe about, he got notice in his office in April. He also acknowledged in his affidavit that he was sent a copy of the claim form that referenced class action the day before from one of the condominium owners. Before the December, did the court have any actual or any type of notice or knowledge that they wanted to be out of this? No. Was that the first instance that the court came aware of it? Yes, absolutely, Your Honor, and the judge made a specific finding in his opinion, which was, you know, as your honors have read it, in his opinion he specifically said, you acknowledged as counsel for Abella that you received notice in August. There is nothing to indicate that you notified this court, the district court, until December of your desire to opt out. So why does the district court have no notice that you had any intention of opting out until December? And I would note that typically if you want to opt out you have to make a motion. They didn't make a motion, they responded, and I'm not saying that Your Honor or the district court can't take that as a motion, but they in essence did nothing, not a thing, and the court recognized that that was one of the pioneer factors. What is the delay? How long is the delay? What is the justification for the delay? Was the delay in the control of the entity who delayed? And all of those factors are met. Abella had notice. They had actual notice. He simply didn't read it. Why he didn't read it, I don't know, but he didn't. And the court in Pioneer does say, although we can recognize excusable neglect under certain circumstances, the court specifically says, we usually do not recognize inadvertence or mistakes as excusable neglect, and this court has also said in the Richards, excuse me, I think it's the Richards case, that simply forgetting about something is not excusable neglect. It doesn't always constitute excusable neglect. We just don't have excusable neglect in this context. We have prejudice because we are entitled to finality, and courts have recognized that where you allow people to opt out late, that is prejudicial in that you undermine the finality of a class action, and that's the context in which we're dealing here, and you undermine the class actions in the future, frankly, because parties like Abella are entitled to rely, which they did, on the finality of the decision. Was there an explanation for the delay from August to December? None. None whatsoever. They didn't argue it in front of the court. They didn't brief it. We frankly don't even know how it came to counsel's attention in August as to how he finally noticed that he had to opt out, and there was absolutely no explanation for why he delayed that from August to December, which is four months. So in terms of excusable neglect, the four factors in essence are prejudice, the judge found prejudice because we're entitled to finality, and there is the situation where the floodgates will be open. In this business about there was only one other pending case or no other pending cases, that's inaccurate. That's not what the opinion said, and the problem is you have a bunch of individuals or entities who own or are in control of windows who could now come forward and say, oh, I didn't know there was a notice because I didn't get direct mail notice like Abella. I had to rely on the website. I finally saw it on the web, and now I want to opt out. And if Abella, who had an attorney who actually received notice and in essence did nothing, gets to opt out, why shouldn't I? And that's what the judge recognized, and that's what the cases recognized. And so the prejudicial factors met. The delay, four months, nothing like the one or two days referenced in the other courts that Abella relies on or that the courts look at. The judge, in this case the district court, distinguished those cases. The next factor, whether Abella was in control of the situation. Absolutely in control of the situation because they had the documents, the notice, in their files. There's also, we supplemented the record. This frankly wasn't in front of a district court judge, and I don't think it needed to be. But there's also emails that went back and forth between Abella's counsel and counsel for MI in the California actions, sending him a copy of the notice, sending him a link to the website. His paralegal referenced or was on those emails and sent it to the attorney at issue in this case. I noticed that. Did he give any explanations to why he didn't respond to the email? No. I think he attempted to supplement the record before this court. We objected. This court ruled that he could not object or that he could not supplement the record. But the explanation basically was, I don't remember it. That was it. So we meet all the factors with respect to Pioneer. And again, going back to the district court's analysis, there's no abuse of discretion. In terms of the business of California, California rule, we're talking about due process. We met all the due process notice requirements. As your honor indicated, there are rules with respect to Rule 23. We don't just reach out to individual litigants and start talking to them about class action. They get notice just like everybody else does. And we cited the credential case in our papers where this issue was brought up where somebody said, hey, I'm in litigation. I should get more notice. And the court said, no, you get constitutional notice, Rule 23 notice, consistent with due process. And you got it in this case. And they got it in this case as well, just like everybody else. In fact, they got even better because they got a long-form notice sent directly to their attorney who was litigating a case with MI Windows. And lights should have gone out, frankly, when that came into the office. And then when he got it in August, again, lights should have gone off and he should have done something. And that was a particular reason why the district court said, you're out. You didn't do anything. If you're not out, he's just in to the sub. Yes, I'm sorry. You cannot opt out. I understand. And your honors, I don't know if there's still an issue with respect to, as indicated in the briefs, subject matter jurisdiction. The court had original subject matter jurisdiction over the case under CAFA. That's how it got there. So there was subject matter jurisdiction. In terms of the issues of whether the exceptions to the Anti-Injunction Act apply, they weren't argued. Maybe they'll be argued on a rebuttal. But the exceptions are met. The court was litigating and settling a national class act. It is entitled under the All Writs Act to enforce its orders. Its order in this case was a final order that incorporated the settlement, which released all claims with respect to defects in the windows. The Abella case is a claim involving defects in the windows. So it is a covered claim. There are covered parties. There are released claims. So the court certainly, under the All Writs Act, can issue the injunction. With respect to the two exceptions, they're both met, and the court went through a long litany of cases, which said in the context of a class action, courts under the Anti-Injunction Act in this court, in the Fourth Circuit, recognized that in the American Honda case, that if you have a complex action and you have orders in the district court which are being violated in a state court through additional litigation, let's say, of the same cause of action involving the same product and the same type of claims, the court, in aid of its jurisdiction for a second exception to the Anti-Injunction Act, can enjoin that action. We also have the relitigation exception, which is met and the district court found properly that it was met, in that you have, again, a settlement which released claims with respect to defects in the windows. The California action, the Abella, they are relitigating that same case with respect to the windows, which is damages associated with alleged defects in the windows. So the Supreme Court recognizes, the circuit courts recognize, the concept that in a class action, if you have a settled case, it's in essence res judicata with respect to the released claims. Other courts, and we cite them in their brief, go through each element. The shorthand is, if you have a settled class action, it bars future claims under the relitigation exception. Am I understanding right that the relitigation exception is a little bit narrower maybe because it doesn't apply until after you have the final judgment, whereas in aid of jurisdiction, some courts will permit injunctions even while settlement negotiations are ongoing before final judgment, right? Yes, Your Honor. Okay, so it's got sort of a broader temporal scope. Yes, Your Honor. Okay. So, and just to pick up on that point, under the aid of jurisdiction, frankly, the court can issue the injunction before the final settlement occurs so that there's nothing to interfere with the settlement. And then, of course, this is why this pending litigation argument, as one of first impression, isn't applicable. If it didn't apply to pending cases, it would have some use, of course, but much less use because in the context of class action, of course you're trying to settle all pending cases and be done. Otherwise, you'd have no finality. And some of the cases that we cite in our brief, including the in-rate diet drugs case and the case for Pennsylvania, the in-rate American investors life insurance company case, those both involve injunctions with respect to pending actions. But there's really no distinction. But for purposes of your case, it doesn't really matter. Do you think both exceptions apply? Absolutely. Okay. Absolutely. And, again, This is after judgment, right? Yes, Your Honor. And the abella tries to say, well, we're not the same party, or this isn't a judgment on the merits, or this isn't the same claims. But if we look at that, again, the broad concept is if you have a class action and a settlement, it bars all claims that are related. Right. We've held that the class action settlement has a preclusive effect on all the class members. Isn't that the same thing? Absolutely. And then if you look at every factor, there are courts that say, if you wanted to address every factor, if you wanted to, we have cited cases which say that class members are the same party. A settlement is a final judgment on the merits, and, of course, we're dealing with the same claims here. If Your Honors don't have any additional questions, I will conclude by asking Your Honors to affirm the district court, the district court properly exercised its discretion in enjoining the action pursuant to the two exceptions in the Anti-Injunction Act, and it properly exercised its discretion and did not abuse its discretion in finding that abella did not meet any justification for a late opt-out. And I just will also say we had no obligation under the California rule to notify them that the related case definition is California. And I'll also note that this is their collateral estoppel argument, we should have done something. If you look at abella's reply brief or their final brief for further support at page one, they waive that argument. They said they're no longer pursuing it. So thank you very much. Thank you, Mr. Perron. Mr. Somerville. Thank you, Your Honor. There's a lot to answer in a short time to do it. Pioneer demonstrates beyond any argument that neglect, even in that case indifference alone, is not enough to say it's not excusable neglect. That's neglect. You look at the other factors to say, was it excusable? The pioneer factors are not exclusive. The court said the determination is at bottom an equitable one, taking account of all relevant circumstances. In this case, I submit that it is relevant that MI could have done something to avoid the oversight and did nothing. In this case, the district court allowed other class members to opt out after the deadline. Earlier than abella, but after the deadline, and the court found no indication that the parties have been prejudiced. That's page 177. As to the impact on federal court proceedings, there can be no impact on the federal court proceeding here. That proceeding is complete, and allowing abella to go its own way is not going to interfere in any way with administration of the class settlement. How is that, Sagan? Isn't the idea, didn't the district court say? The district court. That if you start letting people unravel the settlement over which the district court has retained jurisdiction, that's going to effectively make the last two years of this district court proceeding a nullity. You don't think that counts? I think there is a very clear distinction between allowing the only party that has a state court pending for the last three years and a new case to be filed. That, I think, probably would be enjoined. But, you know, that's not this case. Okay, so you think the Anti-Injunction Act would allow for an injunction against a new case? Against new cases, yes. I think that's very different from a case that's been going on. That doesn't quite make any sense, does it? I don't understand. I mean, let's forget the other arguments. Let's assume somebody agrees to a settlement, knowingly agrees, comes in and says it's a great settlement. Court enters the final settlement, issues an order, and enjoins anybody, and they release it. And then all of a sudden, that person who subscribed to the settlement begins a new litigation. Or had old litigation and continues to pursue it. I mean, at that point, you've got to stop it. The person has agreed to release of those claims, has agreed to the compensation and the arrangements reached in the settlement. I don't think it's appropriate then for the court to let litigation go parallel to that. The litigation resolved that. It brought peace to the parties over the dispute. Every compromise settlement that's enforced by a judgment bars re-litigation of the same causes of action. But I think your question, if I understand Your Honor, goes to the Anti-Injunction Act. My question goes to your distinction between future cases, barring future cases, or existing cases. And it seems to me, if there's 25 existing state cases going on, and then all of those people come into the MDL and say, that's great, I'm going to subscribe to the settlement. And they all sign off and the court issues a final consent order. And then some of these people go back to their courts and start litigating again to get double-dipped, so to speak. You don't think that should be enjoined? The question is, if it's Anti-Injunction Act, then I don't think it should be. If the question is excusable neglect, then I think it should be. I'm assuming everybody had notice there's no excusable neglect. They chose not to opt out. We're talking about the injunction now to enforce the final settlement. And the injunction to enforce a settlement should enjoin ongoing cases as well as future cases because the release covers the entire and gives the parties peace. What in the Anti-Injunction Act would distinguish between a case that was pre-filed and a case that is filed after the settlement? I don't understand the distinction. That's my question. I think the aid of jurisdiction exception would allow an injunction against filing a new case as to an existing case. The standard is whether it would seriously impair the federal court proceeding. And why does it make any difference to the level of impairment, the date on which the thing was filed? There is still no showing of any impairment to either MI or the district court proceeding judge. And that could be your argument. And maybe you want to back off of this, but I don't understand why that would turn on whether this case was filed before the final judgment in the class action or after. Either way, you would say there's no serious impairment. I think that issue, except perhaps as to the administration of the settlement, there may be a distinction there between a party that is asking to be allowed to opt out after the deadline and a new party that comes forward to bring a new suit. All right. Thank you. We'll adjourn court for today and then come back and re-counsel. This honor, of course, stands adjourned until tomorrow morning. God save the United States and this honor to you.
judges: Paul V. Niemeyer, James A. Wynn, Jr., Pamela A. Harris